THE ARIES.

THE VALENTINE.

(District Court, S. D. New York. November 16, 1908.)

COLLISION (§ 95*)—SCHOONER AND TOW OF TUG—BOTH VESSELS IN FAULT.

A tug which was proceeding on a southeasterly course in Long Island Sound at night against a strong flood tide with a tow of five barges strung out to nearly a mile in length *held* in fault for unnecessarily having so long a tow across the usual course of other vessels and nearly stationary, and liable for a collision between one of her barges and a schooner passing westward. The schooner also *held* in fault for negligent navigation in not avoiding the barge, it appearing by a preponderance of the evidence that the latter was carrying proper lights.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

In Admiralty. Suit for collision.

Libel by the owner of the schooner Julia Davis to recover damages for a collision between the schooner and the barge Valentine, in tow of the tug Aries, about 7 p. m. on January 2, 1908, half a mile south of Race Rock, in Long Island Sound. The Aries, bound east, had a tow of five barges on hawsers, one behind the other, the Valentine being the fourth barge. The steamtug Vigilant, with a tow of four barges, also on hawsers, was about a quarter of a mile away on the port side of the Aries, and a little astern of her, heading in the same direction. The first three barges in tow of the Aries had masts and sails, and carried colored side lights, and the last two barges carried a white light forward and aft. The barges in tow of the Vigilant all carried a white light forward and aft. The schooner Julia Davis, heading in the opposite direction, passed between the two tows, and came in collision with the barge Valentine.

Wheeler, Cortis & Haight (Charles S. Haight, of counsel), for libelant.

Carpenter, Park & Symmers (Samuel Park, of counsel), for claimant.

HOLT, District Judge (after stating the facts as above). The evidence that the proper lights were set and burning on the barge Valentine, with which the schooner Davis collided, seems to me to largely preponderate. Even if I could accept the evidence of the men on the schooner in respect to the lights on the Valentine, there is no substantial denial that there were proper lights on the Bristol, the following barge, and I do not see any explanation of the fact that the schooner continued to hold her course, instead of luffing, except either that they saw the lights on the Valentine and Bristol, and thought that they were a part of the Vigilant's tow, or else hastily assumed that the three vessels in tow carrying red lights constituted the whole of the tow, and were not keeping an adequate lookout. The schooner technically, of course, had the right of way, but that fact did not ex-

empt her from the duty of taking all proper steps to avoid collision. She knew that the tide was strong flood, and that the tugs, with their heavy tows, could make but slow progress against it. She could see by their lights that they were on a southeasterly course, and it seems to me rash to have pursued a due west course, after she had entered the lane between the two tows, until she was sure that she had passed beyond the last barge in tow of the Aries. Having been compelled by the evidence to reach the conclusion that the lights on the Valentine were burning and were visible, I cannot avoid the conclusion that the schooner was in fault.

On the other hand, I cannot avoid the conclusion that the Aries was in fault for having so long a tow. The length of the tow, according to the lowest estimate of any witness, was more than 4,200 feet, and according to some of the witnesses was more than 4,800 feet. Here were two tugs coming through the Race side by side, with the flood tide so strong that they were almost stationary, with tows nearly a mile long stretching out behind them right across the course. There is no necessity for tows of such length. They are a constant menace to navigation. The general rule is, of course, that a steam vessel shall keep out of the way of a sailing vessel, and that a tug and tow constitute one steam vessel. But when a tow is made up as the Aries' tow was, and is proceeding against a strong tide, it is almost stationary, and is substantially incapable of maneuvering so as to avoid a sailing vessel, and it itself constitutes an unnecessarily difficult obstacle in a sailing vessel's course.

My conclusion is that the damages should be divided in this case between the schooner and the tug Aries.