<hr/>

## THE BULGARIA.

(District Court, S. D. New York. February 10, 1909.)

Collision (§ 43*)—Sailing Vessel and Steamer—Evidence.

Collision between a steamer and a schooner in the western end of Gedney's Channel; both bound into New York. The schooner held her course across the channel but the steamer kept on and struck her near the stern. *Held*, that it was an ordinary case of collision between a steamer and a sailing vessel and the usual rule requiring the former to avoid the latter should be applied.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 43.*]

(Syllabus by the Judge.)

Convers & Kirlin, for libellant.
Wheeler, Cortis & Haight, for claimant.

<hr/>

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

ADAMS, District Judge. On the 16th day of December, 1907, the steamship Bulgaria and the five masted schooner Hudson, 266 feet long, collided in the western end of Gedney ·Channel at about 12:30 o'clock P. M. The day was clear with a strong W. N. W. wind. The tide was ebb. The schooner was tacking up the bay, in ballast, bound to New York, for the purpose of caulking her decks. She had been trying all the morning to get in by Sandy Hook with a head wind, and an adverse tide, but being light her progress over the ground in the direction she wished to go was not great. Her course, prior to the collision, was about N. ·by W., which she had been on for about 2¼ miles from the Black Buoy, marked "S 3," near the Oil Spot off Sandy Hook, at a rate of 6 or 7 miles per hour.

The Bulgaria, a twin screw steamship, about 500 feet long, bound from Naples, Italy, to New York, after reaching the vicinity of the entrance to the bay was proceeding into the Gedney Channel at about the rate of 9 or 10 knots, on a course of W. by N. or W. N. W., when she observed the schooner, at that time several miles away, on her port bow and heading as stated.

Both vessels kept their courses, which gradually brought them together.

The schooner Carib II, a smaller vessel than the Hudson, was also sailing into New York, and was in danger of collision with the Bulgaria, when she changed her course and went under the Bulgaria's stern, about the time of the collision between the latter and the Hudson.

The Hudson claims that the Bulgaria was solely in fault for the collision and that the Bulgaria has failed to establish an alleged defense that the former changed her course.

The Bulgaria claims that she was at a practical standstill at the time of the collision; that the vessels were brought into dangerous proximity by an excusable mistake made by both, the schooner expecting to clear the steamer's bow and the latter expecting to pass under the schooner's stern by a safe margin and that the collision resulted from under estimates of the leeway, particularly on the part of the Bulgaria, ·to which the leeway appeared greater the closer she approached the Hudson, so much so that as the schooner was sliding down to leeward, it seemed that she was keeping off. It is urged in this connection that it should have been apparent to the Hudson, as it was finally to the Bulgaria, that it was necessary to do something to prevent the vessels coming together; that as the Bulgaria, with her deep draught, was confined to a narrow channel, the only thing she could do was to stop and reverse her engines, and that therefore the schooner should have kept out of the channel, and in the emergency she should have been put about instead of keeping on her course. It is further urged by the steamer that she was stopped in the water at the time of the collision; that the damage was done by the schooner's movement and that there would have been no collision if the schooner had not persisted in crossing the channel.

It seems to be clear that the schooner did not change her course and that the collision was due to the Bulgaria keeping up her headway too long. She did stop and reverse before the collision and changed

her course somewhat to the port, not enough however to go astern of the schooner. She still had enough headway at the time of the blow to seriously damage the schooner by striking her, with some force, a short distance from the stern on her starboard side, causing damage, claimed to have amounted to $26,000.

There does not seem to have been any adequate excuse for the Bulgaria's fault in this respect. It is, however, urged very strongly that the schooner was in fault in the respects mentioned and two authorities are cited in support thereof, viz.: The Gladys, 144 Fed. 653, 75 C. C. A. 455, and Horton v. The Aries and The Valentine (decided by Judge Holt November 16, 1908) 165 Fed. 514. The former case was a Circuit Court of Appeals decision, reversing a decision of this court, holding the Gladys, a towing tug, solely in fault for a collision between a schooner and the tow, and deciding that the schooner was also in fault for failing to keep clear of the tow when it became apparent that otherwise there would be a collision. It was held here that the schooner's failure to keep clear, if an error at all, was one in extremis for which the schooner should not be held under the circumstances, but a majority of the court on appeal held that the schooner was also in fault. The court said (144 Fed. 657, 658, 75 C. C. A. 459, 460):

"The next question presented is whether the schooner was herself in fault. As a privileged vessel, she was bound to maintain her course so long as it was possible for the burdened vessel to avoid her, at least in the absence of some distinct indication that the burdened vessel was about to fail in her duty. We are of the opinion that the schooner had notice of the intention of the tug to hold her course, and thus create a situation where disaster was inevitable unless the schooner gave way, at a time when there was ample opportunity to have avoided a collision had she acted promptly and with ordinary skill and prudence. It was a clear night with the moon shining brightly. The schooner had seen the tug and tow for an hour and a half before the collision. Every fact necessary for her to know as to the make-up and course of the tug and tow was apparent during all this time. She knew, if both vessels held their course and speed, that a collision was certain unless she succeeded in crossing ahead of the tug. That the tug with her tow, four-fifths of a mile in length, could cross ahead of her was, of course, an impossibility. The tug gave no indication of changing her course, and the situation was one calling for the utmost caution on the part of the schooner.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Her initial fault was in waiting until she got in this perilous position. If, the moment she saw the tug cross her course, she had gone off to starboard she would certainly have escaped, and she probably would have done so by coming up into the wind and going off on the other tack. Her hesitation at the crucial time was inexcusable. She had plenty of time to prevent a collision after it was evident that she alone could prevent it, and for her fatal procrastination she must be held in fault and bear her share of the loss."

There is nothing in that case which will help this steamer. It is apparent here that the schooner was entitled to rely upon the steamer keeping clear until it became obvious that she could not, or would not, perform her duty. There was nothing effective that the schooner could do in the extremity created by the steamer's manifest fault.

The Horton Case was one of collision between a schooner and a long tow. The tow was practically stationary and unable to manœuvre. It was therefore held that the schooner was partly to blame for the collision. It does not apply here.

The schooner was justified in using the channel and the steamer was required to avoid her. She should have noticed and provided for the schooner's leeway. I see nothing in the case to take it out of the ordinary rules.

There will be a decree for the libellant, with an order of reference.